## Commonwealth v. Davenport

■■■■■■■■■■■■■■

*Clyde Holt,* assistant district attorney, for Commonwealth.

*Stewart P. McConnel,* for defendant.

McCREARY, P. J., April 16, 1951.—On March 29, 1951, we heard testimony in the matter of defendant's appeal from a summary conviction for an alleged violation of section 316(A) of The Game Law of June 3, 1937, P. L. 1225, as amended, 34 PS §1311.316. This section reads as follows:

"Except in the defense of person or property, to hunt, chase, shoot at, take, or kill, or pursue with intent to take, kill, or wound, any wild birds or wild animals by any method, including the use of dogs, without first securing a license and license tag as hereinbefore required, and wearing such tag and showing or displaying such license as required by the provisions of this article, but nothing in this clause shall be construed to prevent any person under the age of eighteen years to trap for furbearing animals or predators without securing a license."

The information against defendant, made November 23, 1950, reads as follows:

"That on the Geo. Barclay farm in Big Beaver Township, in the County of Beaver, Pennsylvania, on the 23rd day of November 1950, the defendant aforesaid did then and there did wilfully hunt for Wild bird or animal without a valid 1950 resident hunters license issued for the current year and was found in the possession of a Shot-Gun. All of which is in violation of Section 316-A of the Act of June 3,

1937, P. L. 1225 as Amended of the Game Laws of the Commonwealth of Pennsylvania."

At the hearing the Commonwealth produced two witnesses, Wilbert Sarver, deputy game warden, and J. Bradley McGregor, game warden, for Beaver County. Sarver testified that on November 23, 1950, at about 3:30 o'clock, he saw defendant in a field on the farm of George Barclay with a 12-gauge loaded shotgun in his possession and that defendant had no hunting license or license tag as required by The Game Law. He further testified that defendant said that he was not hunting but that he was just out shooting hawks. He admitted that defendant had no game of any nature on his person or in his possession.

McGregor was, of course, not present at the time Sarver refers to as the time he saw defendant in the field with a gun, and did not purport to testify about the event. He was merely called to testify that his interpretation of the law is that a member of the family or household of a citizen of the United States residing within the Commonwealth of Pennsylvania who is regularly and continuously engaged in cultivating the soil for general farm purposes, etc., is not within the exemption allowed by section 317 of The Game Law, unless he, too, is regularly and continuously engaged in farming. That section reads in part as follows:

"Unless the right to procure a license or to hunt or trap anywhere within the Commonwealth has been denied under the provisions of this act, any citizen of the United States residing within this Commonwealth who is regularly and continuously engaged in cultivating the soil for general farm crop purposes, commercial truck growing, commercial orchards or commercial nurseries, as either the owner or lessee or tenant of said lands, or as a member of the family or household or reguarly hired help of such owner

or lessee or tenant, shall be eligible to hunt and trap on said lands, including the woodlands connected therewith and operated as a part thereof, without a resident hunter's license, if such owner, lessee, tenant, member of the family or household or hired help resides in a dwelling situated upon the property so being cultivated and shall have continuously resided thereon and assisted in the cultivation of said land for a period of sixty or more days prior to the general open hunting or trapping season."

Of course the court is the branch of the government charged with the responsibility of interpreting the law, but we permitted Mr. McGregor to give his interpretation of the law because we have great confidence in his reputation as a sportsman and in his devotion to his duty as a game warden, as well as in his integrity as a witness.

However, when we are called upon to interpret a penal statute, we are compelled to construe it strictly and unless the legislature has branded the actions of defendant as illegal in clear language, we must find him not guilty.

The Commonwealth made out a prima facie case of hunting without a license against defendant on the testimony of Sarver, because section 318 of The Game Law provides as follows:

"For the purpose of this act, the fact that any person shall be found in possession of a gun, trap, or other device of any description useable for the purpose of killing or taking wild birds or wild animals, or in the possession of the dead body of any wild bird or wild animal, either in the field, in the forests, on the public highways, or on the waters of this Commonwealth, shall be considered 'prima facie evidence' that such person is hunting, and shall require him at all times to display his license tag for the current

year as provided in this article, and to show immediately, upon demand, his resident or non-resident hunter's license to any officer whose duty it is to protect the wild animals and birds, or to show his license immediately upon demand by any owner or lessee, or by any employe or representative of such owner or lessee, upon whose lands such persons may be found."

Defendant testified that he is the son-in-law of George W. Barclay and that he was, at the time of the alleged offense, "a member of the family or household" of Barclay residing in the Barclay residence on the farm in question and that he assisted in the cultivation of said land for a period of 60 or more days (three years) prior to the general open hunting season in 1950. Barclay testified to the same thing. Both also testified that Barclay has been "regularly and continuously engaged in cultivating the soil for general farm crop purposes" for many years. They did not testify that Barclay was "exclusively" engaged in cultivating the soil for general farm purposes, but the statute does not require it.

Neither witness testified that defendant was regularly and continuously engaged in cultivating the soil for general farm purposes, but section 317 of The Game Law does not require it. It only requires that defendant be a "member of the family or household" of one who does such cultivating, and that he "resides in a dwelling situated upon the property so being cultivated and shall have continuously resided thereon and assisted in the cultivation of said land for a period of sixty days or more prior to the general open hunting or trapping season". We are satisfied, under the testimony, that a strict interpretation of this section of the law requires us to hold that defendant was within the exemption defined by section 317 of the act, even though it appears from the testimony that at times

he left his wife and family there and went to refrigeration school under the GI Bill of Rights for 11 months prior to November 23, 1950. He still retained his residence and kept his family on the farm and assisted in the cultivation of the land.

In addition he testified under oath that he was not hunting. He admitted that he had a loaded gun and no license, but he insisted, under oath, that he was not hunting. He denied Sarver's statement to the effect that on November 23rd he admitted that he was hunting for hawks. He says he merely asked Sarver if it was not legal to hunt for hawks on a farm on which one resides. He says under oath that he had a little two-month-old pup with him and that he was going to shoot targets to get the dog accustomed to shooting noises.

We feel that the part of section 318 of The Game Law which provides that "In all cases of arrest for violation of any of the provisions of this section, except where the dead body of any wild bird or wild animal is found in possession of the accused, the affidavit of the person charged with such violation and satisfactory proof of his innocence, shall rebut what is termed 'prima facie evidence' in this section" is satisfied by defendant's statement, under oath, to the effect that he was not hunting, but target shooting, and that thereby the "prima facie" case made out by the Commonwealth's witnesses was rebutted, inasmuch as it appears from the Commonwealth's case that defendant did not have in his possession at the time of his apprehension by Sarver "the dead body of any wild bird or wild animal".

The Commonwealth having failed to make out a case of "guilty beyond a reasonable doubt", the appeal must be sustained.

*Order*

Now, April 16, 1951, for the foregoing reasons the appeal of defendant is sustained, he is found not guilty, and Beaver County is ordered to pay the costs.